## STATE v. ROBERT PHELPS.

209 N. W. 2d 780.

July 20, 1973—No. 43666.

*Robins, Meshbesher, Singer & Spence, Ronald I. Meshbesher,* and *James H. Gilbert,* for appellant.

*Warren Spannaus,* Attorney General, *Richard B. Allyn,* Special Assistant Attorney General, *Robert O'Neill,* County Attorney, and *Robert J. Goggins,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Peterson, Todd, and Gillespie, JJ.

PER CURIAM.

Defendant, convicted of theft (retaining possession of stolen property valued at more than $2,500) in violation of Minn. St. 609.52, subds. 2(1), 3(1), and sentenced to imprisonment for a term of 10 years,[1] appeals from judgment of conviction and from the order denying his motion for judgment of acquittal or

---

[1] Pursuant to an order of this court, defendant is free on bail pending the outcome of this appeal.

for a new trial, challenging not only the sufficiency of the evidence but also the trial court's orders refusing to suppress certain evidence on Fourth Amendment grounds and refusing to rule that in the event defendant took the stand the state could not use evidence of prior convictions to impeach his credibility. We affirm.

On October 18, 1971, Sergeant Howard Halverson of the Scott County sheriff's office applied for a warrant to search the John Fuller farm in Scott County for certain specifically described stolen property. Halverson's affidavit, attached to the application, stated that John Fuller had informed him that he had observed one Eddy Phelps, who was renting the basement of Fuller's house and part of the barn on his farm, and two other people using a cutting torch to disassemble a brand new 1972 Ford pickup truck in the barn. Halverson stated further that Fuller had obtained an inventory sheet in the truck showing it to bear serial number F25YPM40125, the same number which he found on an engine in a 1965 Ford pickup, bearing license number YE6468, in the barn. Halverson added that on the basis of information given him by Fuller he had reason to believe that Eddy Phelps and the other two were concealing on the farm other specified property, including a Ford tractor whose serial number matched that listed in a report of a stolen tractor he had received from the Orono Chief of Police.

While Halverson was obtaining the search warrant from the magistrate, a deputy sheriff and an agent of the State Bureau of Criminal Apprehension maintained a surveillance from a point approximately 1/2 mile from the farm. While maintaining this surveillance they observed a pickup truck (which, as it developed, defendant owned and was driving) leave the farm. Pursuant to radio instructions received from the sheriff, the two stopped the truck. At the time of this encounter they observed in the bed of the truck in plain sight four new mounted tires. After checking defendant's driver's license the two asked defendant to return to the farm and await the arrival of the sheriff

and Halverson. There is a dispute in evidence as to whether defendant voluntarily complied with this request, defendant contending that he returned to the farm only because the officers said that he was not free to leave. In any event, defendant did drive the truck back to the farm.

A short time later the sheriff and Halverson arrived on the scene and executed the search warrant, discovering pursuant thereto the items which defendant sought to have suppressed, including the engine and numerous parts from the new 1972 pickup, which the officers later positively determined had been stolen from Southdale Ford.

After completing the search, the officers placed defendant, Eddy Phelps, and Richard Mattila, all of whom were present during the search, under arrest for possession of stolen property and advised them of their rights. After being advised of his rights, defendant not in response to any question stated, "Let's not get those other two fellows involved. This is all my deal."

At defendant's trial the state introduced, in addition to the above evidence, evidence that the stolen truck had cost Southdale Ford between $2,900 and $3,000, evidence that defendant was one of the two men who had been working with Eddy Phelps in disassembling the truck, evidence that the tires in the back of defendant's truck were like the tires that had been on the stolen truck, evidence that the engine from the stolen truck had been found installed in another truck registered in defendant's name, and evidence that defendant had admitted to a friend after the arrest that he had planned to use the engine from the stolen truck in his own truck.

1. Defendant contends, first, that the trial court should have granted his motion to suppress evidence seized pursuant to the search warrant because the magistrate did not have sufficient facts on which to base his probable cause assessment or sufficient basis for believing that the source of the facts was credible and reliable and had obtained the facts in a reliable manner.

We have no difficulty in rejecting defendant's contention that

the magistrate did not have sufficient facts on which to base his probable cause assessment. The fact alone that three men with cutting torches were in the barn disassembling completely in late 1971 a brand new 1972 Ford pickup truck justified, indeed almost compelled, the inference that the truck was a stolen truck which the men were disassembling in order to escape detection. Since we believe that the facts as stated in the affidavit gave the magistrate sufficient basis for believing that stolen property was being concealed on the described premises, we need not decide whether in the circumstances it was proper for the prosecutor to introduce supplemental affidavits at the Rasmussen hearing relating to oral representations that were also made to the magistrate in support of the application for the search warrant. See, State v. Burch, 284 Minn. 300, 170 N. W. 2d 543 (1969); State v. Campbell, 281 Minn. 1, 161 N. W. 2d 47 (1968).

We also believe that the magistrate had sufficient facts from which he could determine that the affiant's named informant was credible and reliable and that the informant had obtained the information in a reliable manner. John Fuller, the informant, was apparently a first-time private citizen informer, not in any way involved in the criminal event which he reported. We have suggested in at least two cases that the truthfulness of such an informer may be presumed. State v. Lindquist, 295 Minn. 398, 205 N. W. 2d 333 (1973); State v. Cox, 294 Minn. 252, 200 N. W. 2d 305 (1972). Further, it appears from the affidavit that Fuller obtained his information from firsthand personal observation, which means that he obtained his information in a reliable manner. State v. Daniels, 294 Minn. 323, 200 N. W. 2d 403 (1972).

2. Defendant also contends that the deputy sheriff and the agent of the State Bureau of Criminal Apprehension illegally arrested him as he was leaving the farm. The state responds to this contention by citing evidence that the officers did not arrest defendant when they first stopped him but merely requested that

he return to the farm and await the sheriff's impending arrival, a request with which defendant voluntarily complied.

Although the trial court did not specifically determine whether defendant returned to the farm voluntarily, we infer from its findings and memorandum that it did not believe defendant's testimony that he returned to the farm only after the officers told him that he was not free to leave. Further, we believe it is significant that the officers did not search defendant or question him during this short period that they were awaiting the sheriff's arrival. It appears likely that the officers at that time had no desire to arrest defendant but rather that their interest was in keeping secure items, such as the tires on defendant's truck, pending the sheriff's arrival with the search warrant. Although we would have preferred that the trial court make specific findings of fact, we believe that under the circumstances the conclusion is justified that there was no illegal arrest prior to execution of the search warrant.

3. Defendant argues that he was prejudiced by the trial court's denial of a timely motion to prevent the use of his prior convictions to impeach his credibility, thereby forcing him to relinquish his right to testify in his own behalf. We do not decide this issue because the record of the proceedings prior to the return of the jury verdict does not disclose either the motion, its denial, or what defendant's prior convictions, if any, were and when they occurred.

4. Finally, we hold that the record clearly supports the verdict. There was more than sufficient evidence that the defendant was in possession of a 1972 pickup truck stolen from Southdale Ford, the value of which was more than $2,500. It is true that possession under Minn. St. 609.52 must be "exclusive." However, this exclusive possession or control means exclusive of third parties, not exclusive of other parties to the crime. State v. Bagley, 286 Minn. 180, 175 N. W. 2d 448 (1970); State v. Zoff, 196 Minn. 382, 265 N. W. 34 (1936).

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.