**Randy Jay BLAISDELL, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C8–85–959.

Court of Appeals of Minnesota.

Oct. 29, 1985.

Review Granted Jan. 2, 1985.

William G. Moore, Fridley, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK, and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Randy Blaisdell's drivers license was revoked for 90 days under the implied consent statute. Blaisdell challenged the revocation, claiming that the stop of his automobile was improper and that he was illegally arrested. The trial court rescinded the revocation of respondent's license. We affirm.

## FACTS

On January 23, 1983, Officer Pfuhl of the Fridley Police Department was on routine patrol. He was informed by the clerk at the Q-Service Station that a car leaving the station may have been involved in a "no-pay" gas theft approximately two months earlier. Shortly thereafter, the clerk informed Pfuhl that he was certain the car had been involved in a "no-pay" theft. The clerk could not give Pfuhl the specific time, date, or amount of the alleged theft, nor did he identify the driver as the individual involved in the theft; he identified only the vehicle.

Officer Pfuhl followed the vehicle. He did not observe any driving violations or any unusual or careless driving. Pfuhl stopped the car in the parking lot of a Pizza Hut restaurant in Fridley. The driver, Randy Blaisdell, approached the police car to ask why he had been stopped. Pfuhl advised him that he was investigating a "no-pay" theft. Pfuhl told him to be seated in the back seat of the squad car while he contacted the police department. Once Blaisdell was seated in the back seat he could not leave because the back doors did not have interior handles.

The trial court found that the officer then observed that Blaisdell had red eyes and slow speech and the officer detected the odor of alcohol. Blaisdell was given a preliminary breath test, which he failed. The officer then arrested him for D.W.I.

Blaisdell was taken to the Fridley Police Department where he was read the implied consent advisory and submitted to a breath test.

As a result of the test, Blaisdell's license was revoked, and he petitioned for judicial review. After a hearing, the trial court concluded that Officer Pfuhl did not have a reasonable suspicion, grounded in specific and articulable facts, that Blaisdell was involved in or wanted in connection with ongoing or imminent criminal activity or that respondent was involved in or wanted in connection with a completed felony. The court also found that Blaisdell was arrested when Pfuhl told him to sit in the back seat of the squad car and that the arrest was illegal because it was not based on sufficient probable cause. The trial court rescinded the revocation of Blaisdell's driver's license, and the Commissioner brought this appeal.

## ISSUE

Is a *Terry* stop of a vehicle to investigate a completed misdemeanor permissible under the fourth amendment?

## ANALYSIS

■ The stop of an automobile and detention of its occupants constitute a "seizure" within the meaning of the fourth and fourteenth amendments, even though the purpose of the stop is limited and the resulting detention quite brief. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); *see also State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). The constitutional validity of a specific detention or "seizure" of the occupants of an automobile for the purpose of questioning has been measured by the standard of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). However, the "less than probable cause" or "specific and articulable facts" standard established in *Terry* as an exception to the warrant requirement is specifically premised on the exigencies of ongoing or imminent criminal

activity. *Terry*, 392 U.S. 1–40, 88 S.Ct. 1868–1889.

The investigatory stop in this case resulted from the officer's suspicion that Blaisdell, or at least Blaisdell's car, had been involved in a completed crime; specifically, a misdemeanor theft.[1] The United States Supreme Court recently addressed the adequacy of cause required to support an investigative stop for a completed crime in *United States v. Hensley*, —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The Court analyzed its previous decisions involving warrantless investigatory stops on less than probable cause, notably *Terry v. Ohio*, recognizing that it had not yet addressed a case involving an investigatory stop of a completed, rather than an ongoing, crime. *Hensley* at 680.

The *Hensley* court then analogized investigatory stops for past criminal activity to *Terry* stops and concluded that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Hensley* at 681. The Court limited its holding to completed felonies and expressly stopped short of deciding whether *Terry* stops to investigate all past criminal activity would be permitted. Neither counsel nor the court has been able to find a Minnesota case addressing the constitutionality of a seizure to investigate a completed misdemeanor.[2] Since the "no-pay" gas theft is categorized as a misdemeanor, our analysis begins, rather than ends, with *Hensley*.

In arriving at its decision, the *Hensley* court instructed that the proper way to determine the validity of stops to investigate past crimes is

to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes. That test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion.

*Id.* at 680.

This is essentially the balancing test used to determine the reasonableness of all seizures "that are less intrusive than a traditional arrest." *Brown v. Texas*, 443 U.S. 47, 49–50, 99 S.Ct. 2637, 2639–2640, 61 L.Ed.2d 357 (1979); *see also Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Brown* the Court stated:

Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

*Brown*, 443 U.S., at 50–51, 99 S.Ct. at 2640–2641.

In balancing these competing interests, the *Hensley* Court stated that there are significant differences between the governmental interests implicated in stops to investigate past crimes and stops to investigate imminent or ongoing crimes:

As we noted in *Terry*, one general interest present in the context of ongoing or

---

1. *See* Minn.Stat. §§ 609.52, subd. 3(5), and 609.-02, subd. 3 (1984).

2. Appellant cites a series of cases, including *State v. O'Neill*, 299 Minn. 60, 216 N.W.2d 822 (1974) for the proposition that Minnesota law allows police officers to investigate misdemeanor offenses. The cases, however, all involve ongoing crimes. We do not decide the difficult question of when an offense becomes a "completed" crime, since the gas theft in question occurring two months before the stop was certainly "completed." However, we think the "past criminal activity" referred to in *Hensley* should be narrowly construed and courts should be hesitant to declare criminal conduct which occurred in the very recent past (such as the same day of the stop) to be "completed." *See Marben v. State Dept. of Public Safety*, 294 N.W.2d 697 (Minn.1980) (stop for tailgating which occurred a few minutes prior to stop upheld).

imminent criminal activity is "that of effective crime prevention and detection." *Terry, supra,* 392 U.S., at 22, 88 S.Ct., at 1880. A stop to investigate an already completed crime does not necessarily promote the interest of crime prevention as directly as a stop to investigate suspected ongoing criminal activity. Similarly, the exigent circumstances which require a police officer to step in before a crime is committed or completed are not necessarily as pressing long afterwards. Public safety may be less threatened by a suspect in a past crime who now appears to be going about his lawful business than it is by a suspect who is currently in the process of violating the law. Finally, officers making a stop to investigate past crimes may have a wider range of opportunity to choose the time and circumstances of the stop.

*Hensley* at 680–81. These differences are compelling in evaluating "the gravity of public concerns served by the seizure," *Brown, supra,* although we recognize that there is always a "strong governmental interest in solving crimes and bringing offenders to justice." *Hensley* at 681.

We must also acknowledge the disparate legislative treatment accorded felonies and misdemeanors. Obviously, and by definition, misdemeanor offenses are punished less severely than gross misdemeanors or felonies.[3] Additionally, the legislature has provided that an officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. *See* Minn.Stat. § 629.34 (1984).[4] We consider this to be a legislative recognition that the public concerns served by warrantless misdemeanor arrests are in some degree outweighed by concerns for personal security and liberty. At the very least, because misdemeanor offenses are considered less serious crimes than felonies and because police cannot arrest for misdemeanors unless the offense is committed in their presence, the public concerns served by seizures to investigate past misdemeanors are less grave than the concerns served by seizures to investigate past felonies and gross misdemeanors.

In analyzing the second *Brown* consideration, we conclude that stops of automobiles to investigate past misdemeanors do not to any great degree advance the governmental interest in solving crimes. The name of the owner of the car can be obtained by recording the license plate numbers of the vehicle. In the present case, it is difficult to see what information, other than the name of the driver, the officer expected to obtain as a result of the stop. While we can envision situations where an automobile stop could advance the public interest to a greater degree than the present stop, we do not believe this will arise in a misdemeanor context with sufficient frequency to appreciably advance the public interest in solving past crimes. Moreover, because the prohibitions of Minn.Stat. § 629.34 would not permit an arrest in these circumstances, the prospect of bringing the suspect to justice is not immediately advanced.

In evaluating the final *Brown* consideration, the severity of interference with individual liberty, we restate the physical and psychological intrusions recognized in *Delaware v. Prouse:* The stop is normally effected "by means of a possibly unsettling show of authority * * * interfere[s] with freedom of movement; [is] inconvenient, * * * consume[s] time, [and] may create substantial anxiety." 440 U.S. at 657, 99 S.Ct. at 1398. Additionally, we cannot overlook the potential of legitimizing a technique for harassment. *See Terry v. Ohio,* 392 U.S. at 37, 88 S.Ct. at 1887 (Douglas, J., dissenting).

■ We conclude that the limited benefits to the public interest resulting from warrantless vehicle stops to investigate past misdemeanors do not outweigh the

---

3. *See* Minn.Stat. § 609.02, subd(s) 2, 3, and 4.

4. *But see* the exception for DWI arrests, Minn. Stat. § 169.121, subd. 1(a) (1984), and arrests for domestic abuse, Minn.Stat. § 518B.01, subd. 14(b) (1984), which allow warrantless arrests based on probable cause.

intrusion on the "motorists' right to free passage without interruption." *United States v. Martinez-Fuerte*, 428 U.S. 543, 557–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1976) (*quoting Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). We therefore hold that vehicle stops to investigate completed misdemeanors violate the fourth amendment of the United States Constitution.

■ The facts of this case add force to the rule's rationale. The clerk at the gas station could not provide the specific date or time of the gas theft; he could not give a license plate number; he could not even identify Blaisdell as an individual involved in the gas theft. The only fact the officer possessed to justify the stop was the clerk's identification of the vehicle based on its physical characteristics. Testimony at trial showed that Blaisdell's car would not hold the amount of gas involved in the theft.

The stop was not constitutionally permissible and the Commissioner may not use in an implied consent proceeding the officer's subsequent determination of probable cause to believe Blaisdell had violated the DWI law.[5]

The trial court also ruled that Blaisdell was arrested when he entered the squad car because the doors could not be opened from the inside. Because we affirm the rescission on the basis of the improper stop, we do not address the issue of whether Blaisdell was, in fact, arrested and if so, whether that arrest was proper.

## DECISION

The trial court properly reinstated Blaisdell's driver's license because the investigatory stop violated his fourth amendment rights.

Affirmed.

---

**5.** Neither party raises the propriety of applying the exclusionary rule to these civil revocation proceedings. *See I.N.S. v. Lopez-Mendoza,* —— U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). However, we note that the Minnesota Supreme

Court applied the exclusionary rule to an implied consent proceeding in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn. 1985).