Randy Jay BLAISDELL, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Petitioner,
Appellant.

No. C8–85–959.

Supreme Court of Minnesota.

Feb. 21, 1986.

Hubert H. Humphrey, III, Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

William G. Moore, Fridley, for respondent.

## OPINION

AMDAHL, Chief Justice.

This is an implied consent proceeding. The Court of Appeals, 375 N.W.2d 880, affirmed the decision of the trial court rescinding the revocation of the driver's license of Randy Jay Blaisdell. The Court of Appeals held that the stop of Blaisdell's car, which led to the discovery that Blaisdell was intoxicated, violated Blaisdell's fourth amendment rights because it was a stop to investigate a completed misdemeanor. Specifically, the court held that *all* stops to investigate *completed misdemeanors* are impermissible under the fourth amendment. We granted the petition of the Commissioner of Public Safety but not for the purpose of deciding the issue decided by the Court of Appeals. Rather, we believe that there was an insufficient basis for the stop and that it was therefore unnecessary for the Court of Appeals to decide the broader issue of whether all stops to investigate completed misdemeanors are impermissible.

An officer of the Fridley Police Department was in the lot of a gas station. A clerk came up to him and said that a car leaving the station may have been involved in a no-pay gas theft 2 months earlier. A short time later the clerk said he was certain of it. The clerk did not give any specifics about the theft, did not give any license plate number, and did not identify the driver as the person involved in the

theft. The officer followed the vehicle and stopped it, telling Blaisdell, the driver, of the clerk's allegations. When the officer seated Blaisdell in the squad car, the officer made observations of signs that Blaisdell was intoxicated. He then arrested Blaisdell for DWI and read him an implied consent advisory. Blaisdell took the implied consent test, which showed he had a blood alcohol level in violation of the implied consent law.

As we indicated, the Court of Appeals ruled that all stops to investigate completed misdemeanors are impermissible under the fourth amendment. The court did not try to define what it meant by "completed misdemeanors," but said that this was one and that misdemeanors committed in the "very recent past" probably are not completed ones.

The United States Supreme Court in a number of cases has indicated that in determining whether or not to stop and temporarily seize a person police must ask themselves if there is "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). However, the first case in which the Supreme Court actually *held* that the stop procedure could be used to investigate a completed offense was *United States v. Hensley*, —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), a case involving a completed felony. The Court of Appeals apparently attached great significance to the fact that in *Hensley* the Supreme Court stated, "We need not and do not decide today whether *Terry* stops to investigate all past crimes, however serious, are permitted." 105 S.Ct. at 681.

We express no opinion as to the correctness of the Court of Appeals' holding. We simply hold that the information provided to the officer by the clerk was not sufficient to justify the stop of Blaisdell. The officer's right to stop Blaisdell depended on the sufficiency of the information that the clerk provided. *See United States v. Hensley*, 105 S.Ct. at 684; *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985). The clerk's information was vague. At first he said that the car may have been that of the thief; then he changed his mind and said that he was sure it was. He gave no license number and no indication that he had a license number or that he knew what the thief looked like. He gave no details as to the theft, other than that it occurred approximately 2 months earlier. In short, the information did not provide the officer with a reasonable basis to suspect the driver, Blaisdell, of having committed a crime. At best, the information suggested that the car possibly was connected with a theft that occurred approximately 2 months earlier. Under the circumstances, the officer was not free to interfere with Blaisdell's freedom of action but, of course, could have simply followed the car and copied the car's license number for possible future use in further investigating the vague allegations.

Affirmed on other grounds.

SCOTT, Justice (dissenting).

I respectfully dissent. In *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975), we recognized that a stop of a motor vehicle by a law enforcement official is constitutional if it is based on specific and articulable facts which, together with any rational inferences therefrom, reasonably warrant the intrusion. We noted in *McKinley* that the actual factual basis for such a stop is minimal. All that is required is that the stop not be the result of mere whim, caprice or curiosity on the part of the law enforcement official. *Id.* at 304, 232 N.W.2d at 911. The majority fails to point to any facts that make the stop in this case a product of such whim, caprice or curiosity.

On January 23, 1985, at approximately 2:10 a.m., Officer Wayne Pfuhl of the Fridley Police Department was sitting in his squad car parked at a Q Petroleum self-service gas station. Officer Pfuhl was approached by the attendant working at the station and was told that the black Dodge Charger just leaving one of the gas pumps might be the same vehicle that was involved in a gasoline theft at the station some two months earlier. A short time later the clerk indicated to Officer Pfuhl

that he was *certain* the black Dodge Charger was the same vehicle involved in the earlier theft.

In *Marben v. State, Department of Public Safety*, 294 N.W.2d 697 (Minn.1980), we noted that information forwarded to a police officer by a private citizen is presumed to be reliable. We upheld in *Marben* an officer's stop of a vehicle based solely on information radioed to the officer by a truck driver. We stated that the officer in *Marben* was able to verify the truck's presence in the area and in close proximity to the car about which the trucker supplied information. *Id.*, 294 N.W.2d at 699. Here, Officer Pfuhl was able to talk face-to-face with the gas-station attendant and learn that the clerk had witnessed an earlier gasoline theft. The attendant told the officer he was certain that the automobile in question was the vehicle involved in that theft. At this point, Officer Pfuhl had specific and articulable facts to conduct an investigatory stop.

In *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985), we held that an anonymous tip by a citizen who had observed a possible drunk driver did not justify stopping the car. We stated, however, that the police dispatcher in *Olson* did not have specific and articulable facts on which to issue the information to the police because the dispatcher knew nothing about the informant nor what the informant saw which led to a suspicion that the driver might be driving while intoxicated. We noted that when the officers following the vehicle failed to observe any erratic driving, the reliability of the informant could no longer be presumed. *Id.*, 371 N.W.2d at 556.

Such was not the case here. Officer Pfuhl was able to elicit information about the earlier gas theft from the informant himself. His purpose in following the car was to investigate this theft. Even though the individual driving the Dodge Charger was not identified by the gas station attendant, it is reasonably likely that, be-

cause the vehicle had been identified, the driver would have some information about the involvement of the vehicle in the theft.

Such investigatory stops are an important part of effective crime prevention and detection. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, the investigatory stop was based on specific and articulable facts and was not a product of mere whim, caprice or curiosity on the part of Officer Pfuhl.

Concluding that there was an insufficient basis for the stop in this case, the majority states that it was unnecessary for the court of appeals to reach the broader question of whether any stop to investigate a "completed misdemeanor" is constitutional. In *United States v. Hensley*, — U.S. —, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the United States Supreme Court held that the proper way to identify the precise limits on *Terry* stops to investigate "completed felonies" is "to apply the same test already used to identify the proper bounds of intrusions that further investigations of imminent or ongoing crimes." 105 S.Ct. at 680.

To carve out an exception to the *Terry* doctrine for "completed misdemeanors" would thwart the state's interest in solving crimes of any nature, whether they be labeled misdemeanors or felonies. An exception for "completed misdemeanors" would appear to rest on the assumption that a misdemeanor need not be solved as promptly as a felony because a misdemeanor does not involve the same threat to public safety as does a felony. This assumes too much. The distinction between felonies and misdemeanors is no longer "broad and deep," but is typically "minor and often arbitrary." *See Tennessee v. Garner*, — U.S. —, 105 S.Ct. 1694, 1703, 85 L.Ed.2d 1 (1985).

The *Terry* test, grounded on the principle of reasonableness, serves to balance the interest of the state in effective law enforcement with the individual's interest in being free of a stop and detention. Its application to situations of "completed misdemeanors" is appropriate.[1]

---

1. Distinguishing between crimes that are "completed" and crimes that are "ongoing" presents problems that may not be easily solved by judi-

cial bodies. If an exception is recognized for "completed misdemeanors," courts would be

I would reverse the court of appeals' determination that all stops of a vehicle to investigate a "completed misdemeanor" are unconstitutional. Such stops can be constitutional if they are based on specific and articulable facts which, taken together with the rational inferences therefrom, reasonably warrant the intrusion. Here, specific and articulable facts were present and the investigatory stop should be upheld.

forced to decide the difficult question of when misdemeanors become complete crimes. The result may very well be arbitrary distinctions that will serve only to confuse citizens and law enforcement officials.