**STATE of Minnesota, Respondent,**

v.

**Russell Joseph DAVIS, Appellant.**

**No. CO–85–1796.**

Court of Appeals of Minnesota.

June 24, 1986.

Review Granted Aug. 27, 1986.

Hubert H. Humphrey, III, Atty. Gen., Edward P. Starr, City Attorney, Michael F. Driscoll, Asst. City Attorney, Reyne M. Rofuth, Asst. City Atty., St. Paul, for respondent.

Philip G. Villaume, St. Paul, for appellant.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and FOLEY, SEDGWICK, LANSING, NIERENGARTEN, RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant Russell Davis was convicted of DWI. On appeal he contends he was improperly stopped by a police officer who obtained information from another motorist that appellant had gone through a red light. We reverse.

## FACTS

Around 2:00 a.m. on April 6, 1985, St. Paul police officer John Cannefax was on routine patrol near downtown St. Paul. While waiting for a light to change, a vehicle approached from the officer's left, slowed but did not stop. A female passenger leaned out of a passenger window of the passing vehicle and shouted, "The car behind us just ran a red light." She motioned toward a red Maverick about four car lengths behind her. She said nothing else and left the area. Cannefax did not observe any other cars in the area where the passenger pointed. Cannefax followed the Maverick a short distance, observed no erratic or unlawful driving conduct, but decided to stop the car based on the tip. After stopping appellant, Cannefax observed indicia of intoxication and arrested appellant for driving while intoxicated.

Following an omnibus hearing, the trial court upheld the stop. Appellant waived a jury trial and was convicted of DWI based on stipulated facts. *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980).

## ISSUE

Did the trial court err in concluding the initial stop of appellant was lawful?

## ANALYSIS

The question of when an anonymous report may constitute sufficient reason for a police officer to stop a motor vehicle has been addressed by the Minnesota Supreme Court and this court. In *State v. Marben,* 294 N.W.2d 697 (Minn.1980), the supreme court upheld a traffic stop where a state patrol officer received a C.B. radio communication from an anonymous truck driver asking the officer to investigate a car that had been tailgating him on an interstate highway for 60–70 miles. The truck driver identified the car as one following him that was in the process of exiting from I-94 onto highway 23, and also told the officer that he could see his squad car from his truck. The officer stopped that driver and, after observing indicia of intoxication, made an arrest for DWI. The stop was upheld because information from private citizens is presumed reliable and because the truck driver's reliability was enhanced by his statement that he could see the squad car parked on the freeway and the officer's verification that the trucker was

in the area and in close proximity to the car in question.

We find controlling the recent Minnesota Supreme Court case of *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985). There a dispatcher notified two sheriff's deputies that an unidentified citizen had called, reporting having observed a "possible drunken driver." The caller described the vehicle's make and color, gave a license number, and designated the car's location and direction of travel (none of which is present here). The two officers went to the vicinity, spotted a white Datsun, verified the license plate number, followed the car for approximately one-half mile without noticing any erratic driving, and stopped the car. The driver successfully challenged the basis for the stop. The majority identified the issue as whether an anonymous tip can provide the requisite reasonable suspicion for an investigative stop of suspected ongoing criminal conduct. After analyzing United States Supreme Court cases and *Marben*, the majority in *Olson* concluded that the facts did not support a reasonable suspicion of criminal activity:

> [We] know nothing about the informant and nothing about what the informant saw which led him or her to believe the * * * driver was "possibly" drunk. * * [I]f the stop is to be justified, it must be on the factual basis of the tip itself. The tip must have indicia`of reliability. * * * If the police chose to stop on the basis of the tip alone, the anonymous caller must provide at least some specific and articulable facts to support the bare allegations of criminal activity. Not much is required, especially for a traffic stop for a suspected traffic offense then in progress. "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y. S.2d 67, 74, 330 N.E.2d 39, 44 (1975), quoted with approval in *Marben*, 294 N.W.2d at 699.

*Id.* at 556. The court found that the dispatcher who issued the message to the deputies needed to have specific and articulable facts supporting a reasonable suspicion that there was a drunk driver on the road. *Id.* at 555.

The only testimony at Olson's trial came from the officer who had talked to the dispatcher. He testified that a citizen had called the dispatcher who then called him reporting that a citizen claimed to have observed a possible drunk driver, giving a location and description of the car. There was disputed testimony as to whether the message from the caller to the dispatcher and the dispatcher to the officer contained a claim that Olson's car was being driven in an erratic manner. The opinion pointed out that the record disclosed nothing about the informant and nothing about what the informant saw which led the caller to believe that the Datsun driver was "possibly" drunk. The trial court held that when the deputies failed to observe any erratic driving by the Datsun after responding to the tip, the reliability of the informant could no longer be presumed, and therefore an investigative stop was unjustified. The Minnesota Supreme Court affirmed.

In *Frank v. Commissioner of Public Safety*, 384 N.W.2d 574 (Minn.Ct.App.1986) an unidentified citizen called the police to report that a car had been tailgating her and at one point almost forced her to drive into a curb. The caller gave a specific description of the car, identifying it as a white convertible with a certain license number, and stated she believed the driver was intoxicated. The police officer responding to a radio dispatch relaying that information located the car, followed it for some time and confirmed that the license number and description were the same as that stated by the caller. After observing it speeding down an alley, the officer stopped the vehicle. This court reversed and rescinded revocation of the driver's license, holding that the facts warranted the stop.

At the hearing on the legality of the stop, in addition to testifying that the anonymous caller's information checked out completely as to color, car model, license

plate number, and location, the officer testified that while following the car down an alley, it was speeding. We distinguish *Frank* from this case because any time a police officer witnesses an ongoing traffic offense and the court finds the testimony credible, there is sufficient articulable reason for a traffic stop.

In *State v. Schmitz*, 369 N.W.2d 579 (Minn.Ct.App.1985), an unidentified couple approached a police officer and stated that they had just seen a brown van and a white car racing on a county road. The policeman, after radioing the local sheriff's office for assistance, saw and stopped a brown van in the area where the couple had reported the racing. The trial court found the stop valid. We affirmed, relying on *Marben.*

In examining the factual thresholds in *Marben* and *Schmitz* relative to a proper investigatory stop, in addition to more detail and clarity than is present here, we find a common thread in the anonymous tipster calling the authorities' attention to ongoing dangerous driving conduct. In *Schmitz*, the substance of the tip was that two vehicles were informally dragracing on a public highway. That conduct is fraught with real and immediate danger to both the public and the drivers involved. Once finding vehicles matching the description of the anonymous tip, the reasonableness of the authorities in stopping those vehicles to inquire is apparent. In *Marben*, the substance of the anonymous tip was that a driver on an interstate highway was continuously tailgating a truck for a period of 60–70 miles. That would indicate at least a one-hour continuous course of driving conduct, again dangerous to the tailgating driver, the vehicle in front, and other vehicles on the road. Again, such a situation, bolstered by specific facts as to time and location, reasonably supports an investigatory stop of the tailgating driver.

The *Olson* case said as much: "Not much is required, especially for a traffic

stop for a suspected traffic offense then in progress." *Olson*, 371 N.W.2d at 556. Even that thread is missing in this case. Nor was the information detailed or clear. *See Blaisdell v. Commissioner of Public Safety*, 381 N.W.2d 849 (Minn.1986) (information too vague to support stop). The anonymous shout from a passing car to the officer simply claimed that a car had gone through a red light. The tipster did not mention color, make, or model of the vehicle nor anything specific as to where the red light may have been. The tipster did not mention the vantage point from which she claimed to have seen the driving violation *and, in fact, did not mention that she herself had seen the claimed violation.*[1] From Cannefax's testimony, it is unknown whether she claimed to have seen a car go through a red light or whether someone else in the car claimed to have seen the violation and then told her about it and asked her to shout out the window as they drove by the police car. The only indication of the location of the vehicle was the woman's wave in the general direction of the Maverick. Had the passing car stopped, and had someone from that car identified himself or herself as the person who actually claimed to have seen the violation and then carried on a short conversation with the officer, there would have been at least something for the police officer at the scene and this court on review to use as a focal point for judging the credibility of the anonymous tipster.

The tip itself must have indicia of reliability. "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612.

*Olson*, 371 N.W.2d at 556.

The record is silent concerning whether there could have been other cars in the

1. In *Marben, Olson, Frank,* and *Schmitz,* the anonymous tipster in each case was the person actually claiming to have seen the wrongful driving conduct, and in each case talked directly to law enforcement officers, either over the phone (*Olson* and *Frank*), or in person *(Schmitz),* or over C.B. radio *(Marben),* giving the officer taking the call at least a brief chance to ask pertinent questions for further detail.

general area that had turned onto side streets before the officer cast his gaze in the direction of appellant's vehicle. Nothing in the record indicates the proximity of intersections controlled by stop lights. The officer followed the car in question and looked for possible erratic or unlawful driving conduct. The officer saw none but decided to stop the vehicle anyway.

Had the anonymous tipster here claimed that appellant's car had been speeding through a series of downtown St. Paul streets, or had run two or three stopsigns or red lights in a row, or had stopped and given the officer at least some detail and identified the person(s) in the car who claimed to have seen the past violation so that the officer would at least have had a chance for a question or two, our result might be different based on *Schmitz* and *Marben.* However, in examining the totality of the record and following *Olson,* we reverse and hold that, on this fact situation, even the minimum threshold for an investigatory traffic stop was not reached. The evidence obtained should have been suppressed.

### DECISION

The police officer did not have reasonable suspicion to stop a motorist's car when the stop was based solely on an anonymous shout from a passing car that a motorist may have committed a single semaphore violation.

Reversed.

SEDGWICK, Judge (dissenting).

I respectfully dissent.

This case is factually and completely indistinguishable from *Marben v. State, Department of Public Safety,* 294 N.W.2d 697 (Minn.1980). The following facts were present in *Marben:* (1) an anonymous tip from a citizen; (2) a car identified by the citizen as tailgating him; (3) the officer could verify the car; and (4) the officer made the stop without any independent observation of erratic or illegal driving behavior.

In *State v. Davis* we have: (1) an anonymous tip by a citizen; (2) the citizen identified the car immediately behind her as having run a red light; (3) the officer observed the car in back to be the only car in the vicinity and therefore identified it; and (4) the officer made the stop without observing any independent or erratic driving violations as did the officer in *Marben.*

This court followed *Marben* in *Frank v. Commissioner of Public Safety,* 384 N.W.2d 574 (Minn.Ct.App.1986). Although the police officer there observed independent violations of law, that was not dispositive of that case. An unidentified citizen there also reported a *fact* which indicated a violation of law, i.e., tailgating by the car behind her.

On the other hand, the recent Minnesota Supreme Court case which the majority finds controlling, *Olson v. Commissioner of Public Safety,* 371 N.W.2d 552 (Minn. 1985), is not analogous. The anonymous citizen there did not state *any facts* which would lead a reasonable officer to suspect criminal activity. The only report was that he observed a "possible drunken driver." A police officer would not have the authority to stop based on that conclusion without a supporting factual basis to conclude that a traffic or criminal statute had been violated.

*Marben* stands for the proposition that a hearsay report by a citizen may be the sole basis for an officer's stop of a moving vehicle if it contains facts indicating a violation of law. The supreme court said:

> [t]he factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person.

*Id.* at 699 (citations omitted).

The majority opinion here ignores the difference between articulated facts which support the bare allegations of criminal activity and the pure conclusion of a "possible drunk driver," *Olson,* 371 N.W.2d 552. Of more concern, however, are the new requirements which the majority seeks to impose upon the holding of *Marben.*

The majority implies that there must be something for the police officer at the scene to use as a focal point to judge the credibility of the anonymous tipster. This requirement clearly contravenes prior law that private citizens are *presumed* reliable. *State v. Phelps*, 297 Minn. 61, 64, 209 N.W.2d 780, 782 (1973) (citations omitted); *Marben*, 294 N.W.2d at 699 (citations omitted).

In addition to requiring that the tipster stop and identify herself and permit the officer to question her, the majority requires the informant to have observed multiple illegal acts, such as "speeding through a series of downtown St. Paul streets, or running two or three stop signs or red lights."

I suggest that the requirements imposed by the majority opinion attempt to eliminate the investigatory stop which has been consistently followed by the Minnesota Supreme Court since *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny, and now imposes on police the probable cause standard to stop a vehicle.

The trial court should be affirmed.

LANSING, Judge (dissenting).

I join in the dissent of Judge Sedgwick.

FOLEY, Judge (dissenting).

I join the dissent of Judge Sedgwick and cite *People v. Ingle*, 36 N.Y.2d 413, 330 N.E.2d 39, 369 N.Y.S.2d 67 (1975). In *Marben v. State, Department of Public Safety*, 294 N.W.2d 697 (Minn.1980), the Minnesota Supreme Court quoted from *Ingle* as follows:

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. *All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.* It is enough if the stop is based upon "specific and articula-

ble facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, *supra.*)

*Marben*, 294 N.W.2d at 699 (quoting *Ingle*, 36 N.Y.2d at 420, 330 N.E.2d at 44, 369 N.Y.S.2d at 74) (emphasis supplied).

In *Marben*, the supreme court also stated, referring to the unidentified citizen who communicated a traffic violation, "[t]he informant was apparently a private citizen and thus is presumed to be reliable." *Marben*, 294 N.W.2d at 699. *See State v. Phelps*, 297 Minn. 61, 209 N.W.2d 780 (1973); *State v. Lindquist*, 295 Minn. 398, 205 N.W.2d 333 (1973); *State v. Cox*, 294 Minn. 252, 200 N.W.2d 305 (1972).

The Minnesota Supreme Court has consistently applied and quoted the standard adopted by the New York court in *Ingle*. *See State v. Engholm*, 290 N.W.2d 780 (Minn.1980); *State v. Johnson*, 257 N.W.2d 308 (Minn.1977); *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). More recently, *Ingle* was cited with approval in *State v. Menard*, 341 N.W.2d 888, 891 (Minn.Ct.App.1984). To reiterate, the significant portion of the standard from *Ingle* is: "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *Ingle*, 36 N.Y.2d at 420, 330 N.E.2d at 44, 369 N.Y.S.2d at 74.

As applied to the case at bar, it is clear that the officer acted in response to a citizen calling to him from a passing car: "The car behind us just ran a red light." The common sense meaning of such a statement is clear. The light was red against the driver and he ignored it, violating the traffic laws. The officer thus had an articulable basis for stopping the subject vehicle. It is equally clear from the evidence that the subject car was in close proximity to and immediately behind the car in which the citizen informant was riding and was the vehicle to which the citizen referred.

The majority opinion strains in its attempt to distinguish *Marben* and thus

strives to distinguish the consistently adhered to standard of *Ingle* by the Minnesota Supreme Court. The distinction fails and the hypothetical theory collapses in light of *Ingle*. Rather, *Marben* and thus the *Ingle* standard should be reaffirmed in this case. The trial court should be affirmed.