**STATE of Minnesota, Respondent,**

v.

**Taofik O. OKEGBENRO, Appellant.**

**No. C1-86-1591.**

Court of Appeals of Minnesota.

June 30, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, James M. Burseth, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and HUSPENI, and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This appeal is from a judgment of conviction of two counts of first degree criminal sexual conduct. Appellant challenges the sufficiency of the evidence, as well as evidentiary rulings. Appellant claims, and the State agrees, that one of the convictions

and accompanying sentence must be vacated under Minn.Stat. § 609.04 (1986). We affirm in part, and vacate one of the convictions and its sentence.

### FACTS

Appellant Taofik Okegbenro picked up M.M. in downtown St. Paul sometime after 1:00 a.m. on January 25, 1986. M.M. testified she asked for a ride to her boyfriend's house on University Avenue in St. Paul. Appellant, instead, took the freeway all the way to south Minneapolis. There he stopped at an apartment building for about five minutes, leaving M.M. in the car with the keys in the ignition. He then drove to a deserted street where intercourse occurred in the car.

Appellant testified consensual intercourse occurred in exchange for money. He stated M.M. was hitchhiking, wearing clothes suggesting she was a prostitute, that she asked him for a "date" before they reached the freeway, and agreed to go to Minneapolis with him so he could borrow the rest of the agreed on price. His friend was not home, but appellant testified M.M. agreed to take $10 if he would pay her the rest the following day. He stated intercourse occurred in the back seat, without any threats. He then drove her to a 7–Eleven store in St. Paul, where she wrote her phone number down for him. He called the following day to arrange payment or another "date," but she was not home.

M.M. testified she remained in the car when appellant stopped at the apartment building because it was cold and dark outside, and because she did not know where she was. She testified intercourse occurred in the front seat and that she submitted only after appellant pressed a knife to her back. She admitted there was talk of sex for money, but testified it occurred just before the attack. She testified she thought he was joking and she asked only because she was curious. When appellant drove her back to St. Paul, she gave him her phone number because "I wanted to have him caught."

At the 7–Eleven store, M.M. called her mother. She then called the police to report the sexual assault. She gave police the license number of appellant's car, along with a description of the car and a description of the suspect. She was taken to St. Paul-Ramsey Hospital for a sexual assault exam, which was positive for sperm. The emergency room nurse and physician each testified M.M. was crying and distraught. No physical injuries, including cuts or bruises, were noted. The following day, M.M. and her mother noted two superficial scratches on her shoulder blade.

Two days after the incident, St. Paul police issued a "Stop and Identify" bulletin based on the license number and vehicle and suspect descriptions. M.M. had not identified any suspects from a photo lineup.

The police stopped appellant's car in response to the bulletin. One of the digits of the license number was different, but the vehicle matched the description and the officer also felt appellant, who was driving, matched the suspect description. The officer ran license and warrant checks, obtained appellant's name, and let him proceed. This information was relayed to Minneapolis police, who showed M.M. a new photo lineup, including appellant's picture, which she identified as the suspect.

Appellant was arrested the following day. He was given a *Miranda* warning, and told what he was being arrested for, including the circumstances of the offense, and where it occurred. At some point, he stated he did not want to talk. The officer at trial testified appellant first responded, "no, not there," when told the rape occurred in Minneapolis. At the Rasmussen hearing, the officer stated this exchange occurred the following day and that appellant volunteered nothing when arrested.

The officer again sought to question appellant at the jail the following day. The officer read appellant the *Miranda* warning. Appellant agreed to talk, and stated he had not been anywhere near the scene that night. First, he stated he had been working, then that he was still living in a halfway house. He then declined to answer further questions. At trial, a police

officer mentioned appellant's choosing to say nothing further.

## ISSUES

1. Did the trial court err by failing to suppress appellant's name and other information acquired after a stop of appellant's car?

2. Did the trial court err by allowing evidence of appellant's invoking his right to remain silent following a *Miranda* warning?

3. Was the evidence sufficient to sustain appellant's conviction?

## ANALYSIS

### I.

*Investigatory stop*

■ Appellant contends the police illegally stopped him on January 27, 1986, two days after the offense, based on the description and license number of the car involved in the assault, and the description of the perpetrator. The State concedes appellant was neither behaving suspiciously nor driving erratically at the time of the stop.

■ Appellant was not arrested, but was subjected to a brief *Terry* investigatory stop. Police may make an investigatory stop for a completed offense based on a bulletin or other information if the bulletin was issued on the basis of articulable facts supporting a reasonable suspicion. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The St. Paul police had enough facts to support a reasonable suspicion.

M.M. gave police an extensive description of the offense and furnished a description of vehicle, license number and offender. *Cf. Blaisdell v. Commissioner of Public Safety*, 381 N.W.2d 849, 850 (Minn.1986) (gas station clerk gave no license number, no suspect description, and no details of two month old theft). It is immaterial that appellant was not engaged in suspicious activity when stopped. *See Hensley*, 469 U.S. at 229, 105 S.Ct. at 681 (police may make an investigatory stop for a completed offense). The suspicion attached to the vehicle was not affected by the difference in one letter in the license number. *See State v. Ferraro*, 290 N.W.2d 177, 179 (Minn.1980) (police were justified in stopping van with license number which, except for one digit, was the same as vehicle license number reported following theft).

### II.

*Post-Miranda statements and silence*

Appellant contends the State should not have been permitted to introduce police testimony that he exercised his right to remain silent. He also argues that police violated his right to remain silent by resuming questioning on the day following his arrest.

■ The supreme court has found admitting a statement made under police interrogation resumed three hours after the defendant invoked his right to remain silent is not error. *State v. Peirce*, 364 N.W.2d 801, 806 (Minn.1985). The court noted that the statement was taken at a different location, by different officers, after a fresh *Miranda* warning, and after the defendant had fallen asleep. Here questioning was resumed after a substantially longer time, almost 24 hours. Although the same officer questioned appellant, he had slept, was in a different location and was given a fresh *Miranda* warning. There was no reversible error in admitting his responses.

■ The State may not elicit testimony that a defendant exercised his right to remain silent after being given a *Miranda* warning. *State v. Beck*, 289 Minn. 287, 291–93, 183 N.W.2d 781, 783–84 (1971). Police here testified that not only did appellant state he was not at the scene, but also that he chose to say nothing further. This testimony should not have been allowed into evidence.

■ A defendant can, at any time, stop questioning by invoking his right to counsel or to remain silent, and the State may not introduce evidence of that fact. *See State v. Roberts*, 296 Minn. 347, 352, 208

N.W.2d 744, 747 (1973) (defendant invoked right to counsel). Appellant, however, waived his claim of error by failing to object or to seek a curative instruction. *See State v. Darveaux*, 318 N.W.2d 44, 50 (Minn.1982) (waiver of claim of error in allowing evidence of partial post-*Miranda* silence); *See also State v. Hofmaster*, 288 N.W.2d 218, 220 (Minn.1979) (defendant waived claim of erroneous reference to postarrest silence). Appellant testified on direct examination that he chose to remain silent. *See State v. Clark*, 296 N.W.2d 359, 366 (Minn.1980) (harmless error because defendant elicited on cross-examination the same testimony on his exercise of the right to remain silent).

■ Appellant chose to refer to his exercise of the right to remain silent and to risk the inference of guilt, in order to rebut police testimony of a prior statement with his testimony at trial. Because appellant waived this claim of error, we need not decide, and do not hold, that the error was harmless because of appellant's use of it himself. *See State v. Vance*, 254 N.W.2d 353, 359 (Minn.1977) (error to allow evidence of defendant's choice to remain silent must be harmless beyond a reasonable doubt). Because appellant waived this claim of error, we decide this issue on the basis of waiver only.

### III.

*Sufficiency of the evidence*

■ Appellant's claim of insufficiency of the evidence rests on inconsistencies and alleged improbabilities in the victim's testimony. Her testimony, however, was corroborated by her prompt complaint and distraught condition. *See State v. DeBaere*, 356 N.W.2d 301, 304 (Minn.1984) (Strong corroborating evidence of nonconsensual intercourse included evidence of a prompt complaint and evidence of victim's distraught condition when she talked to police.) On appeal, the evidence must be viewed in the light most favorable to the jury's finding of guilt. *State v. Ellingson*, 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969).

Appellant's argument focuses on four areas: 1) lack of evidence of use of a knife; 2) the improbability that intercourse occurred in the front seat; 3) inconsistencies between M.M.'s trial testimony and her statements to police; and 4) M.M.'s admission there was talk of sex for money.

M.M. testified a knife was used to coerce her into submitting. Any inferences from her testimony as to how the knife was used, and any inconsistencies with the medical evidence, were for the jury as factfinder to determine. Similarly, the jury was not required to find sexual intercourse in the front seat impossible. Its alleged improbability, as well as the other improbabilities and inconsistencies claimed by appellant, go to the credibility of the witness, which was for the jury to determine. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn. 1985).

This court on review will assume the jury believed the State's witnesses and disbelieved contrary evidence. *State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981). There was sufficient evidence to support the conviction.

### DECISION

The trial court did not err by denying appellant's motion to suppress evidence obtained from the investigatory stop. Appellant waived his claim of error in the admission of evidence of his exercise of the right to remain silent. The conviction is supported by sufficient evidence. The second conviction and accompanying sentence is vacated.

Affirmed as modified.