Paul Racine **OLSON, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Petitioner.**

No. C1–84–517.

Supreme Court of Minnesota.

Aug. 2, 1985.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Asst. Attys. Gen., St. Paul, for petitioner.

James H. Kaster, Minneapolis, for respondent.

SIMONETT, Justice.

This is an appeal by the Commissioner of Public Safety in an implied consent proceeding. The Commissioner revoked the license of the driver, respondent Paul Racine Olson, because the results of chemical testing indicated that he had a blood alcohol concentration of .10 or more. Minn. Stat. § 169.123 (1980). The Hennepin County Municipal Court rescinded the revocation because the sheriff's deputies who stopped Olson did not have sufficient reliable information to justify the stop. The Hennepin County District Court affirmed. We granted the Commissioner's petition for permission to appeal. We now affirm the district court.

At 10:45 p.m. on February 24, 1982, two Hennepin County Sheriff's Deputies, Berry and Brown, were on patrol in the area of Highway 55 and County Road 116 when, as Deputy Berry describes it, they received a radio dispatch that "a citizen had called in reporting that he observed a—possibly a drunken driver." The caller had described the vehicle as a white Datsun with Minnesota license number EMN 880 driving westbound on Highway 55 from County Road 116. The officers headed west on 55 to look for the car and spotted it traveling eastbound on 55 at Rockford just east of County Road 50. The officers followed it as it turned into the parking lot of a bar and restaurant, where they got close enough to read the car's license plate and confirm that it was the described Datsun. They continued following as the car went through the lot and onto westbound 55. Having followed the car for about half a mile, during which time they noticed no erratic driving, the deputies stopped the car.

Deputy Berry approached the Datsun on foot and asked the driver, respondent Paul Olson, for his license. Berry noted an odor of alcohol in the car and noted that Olson's breath smelled of alcohol, that his eyes were bloodshot, that his speech was slurred, and that his gait was unsteady. He told Olson they had received a radio report stating that he was driving in an erratic manner and told him he was under arrest for driving while under the influence. At the Medina Police Department, Olson called and talked with his attorney, then submitted to a blood test. The test showed he had a blood alcohol concentration of .155.

The issue is whether, on these facts, the deputies were justified in stopping Olson's car. Clearly this was a temporary, investigative stop and, therefore, required only a "reasonable suspicion" of criminal activity rather than probable cause. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). More precisely, the question before us is whether an anonymous tip provides the requisite reasonable suspicion for an investigative stop of suspected ongoing criminal conduct. The United States Supreme Court has not directly addressed this issue, but three of its decisions, as well as one of our own, are of assistance here.

In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), a police officer in a high-crime area was approached by a person he knew who had given him information in the past and was told that a man seated in a nearby car, Williams, was carrying narcotics and had a gun at his waist. The officer approached Williams and asked him to open his car door. When Williams lowered the window rather than complying with the request, the officer reached in and removed a handgun from Williams' waistband, where the informant had told him it was. The officer then arrested Williams for possession of the gun and, in a search incident to the arrest, found heroin and other contraband. The Court stated that the tip may have been insufficient for an arrest or search warrant but that it clearly was reliable enough to justify the stop. *Id.* at 146–47, 92 S.Ct. at 1923–24. The Court added:

> In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—

for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Id.* at 147, 92 S.Ct. at 1923–24.

The Court in *Adams* stated that the tip in question was more reliable than an anonymous telephone call, *id.* at 146, 92 S.Ct. at 1923; however, the Court clearly did not mean to suggest that police officers may not rely on anonymous telephone tips in deciding whether to temporarily seize or detain a person. Indeed, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court upheld a *probable cause* determination based in part on an anonymous tip. The tip there took the form of an anonymous letter to the police describing the method used by the Gateses to import drugs to Illinois from Florida and indicated that the Gateses were presently in the process of importing more drugs using the same method. Police, in cooperation with Drug Enforcement Administration agents in Illinois and Florida, commenced an investigation that led to the corroboration of a number of the details in the letter and to the issuance of a search warrant which was executed when the Gateses returned home with the drugs. Upholding the issuance of the warrant, the Court stated, "[W]e are inclined to agree * * * that, standing alone, the anonymous letter * * * would not provide the basis for a magistrate's determination that there was probable cause to [search]." *Id.* at 227, 103 S.Ct. at 2326. However, looking at the "totality of the circumstances"—which consisted of the anonymous letter and the corroborating evidence—the Court concluded that the magistrate had a "substantial basis" for concluding that the police had probable cause to search. *Id.* at 241–46, 103 S.Ct. at 2333–36. In the course of reaching this conclusion, the Court abandoned the so-called two-pronged *Aguilar* test for evaluating hearsay information in making probable cause assessments, in

part because a rigorous application of the test would virtually rule out police reliance on anonymous tips, even when corroborated. *Id.* at 230–41, 103 S.Ct. at 2327–33. The Court stated further that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and that therefore seemingly innocent conduct may sufficiently corroborate an anonymous tip, the significant fact being "not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* at 244 n. 13, 103 S.Ct. at 2335 n. 13.

The most recent United States Supreme Court decision is *United States v. Hensley*, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). There, a police department in a metropolitan area issued a "flyer" stating that defendant was wanted for investigation of an aggravated robbery. Police in another department, seeing defendant in a car and having read the flyer, made an investigative stop, then observed a handgun in the car and made an arrest. The Court upheld the investigative stop. The Court reasoned that, since the flyer was shown to have been issued on the basis of articulable facts supporting a reasonable suspicion, an objective reading of the flyer justified the arresting officers in stopping the defendant briefly for questioning and, while detaining him, checking to see if a warrant had been issued. Although the flyer did not set out specific and articulable facts as to why the defendant was suspected of robbery, an officer of the police department issuing the flyer testified at the trial court proceedings and gave specific and articulable facts which amply supplied a basis for issuance of the flyer.

The leading Minnesota case is *Marben v. State, Dep't of Public Safety*, 294 N.W.2d 697 (Minn.1980). In *Marben*, a trooper was parked on I–94 near the intersection with Highway 23 in Stearns County when he received a C.B. radio communication from an unidentified trucker. The trucker, who said he could see the trooper's squad car, asked the trooper to "check out" a car that had been tailgating him for 60 to 70 miles.

The trucker said that the car was then exiting from I–94 onto Highway 23. The trucker apparently continued on his way. The trooper pursued the car, driven by Marben, and, although the trooper saw nothing improper in the operation of the car, he stopped it. Upon observing Marben's unsteady walk and bloodshot eyes and having administered roadside physical coordination tests, the trooper concluded that Marben was intoxicated and arrested him for DWI. We upheld the stop, stating that, since it appeared that the trucker was a private citizen, his reliability could be presumed. *See State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978) (a first-time citizen informer's credibility generally is presumed; such a person is "one who is not involved in the criminal underworld and who has no track record as a police informant"). We also stated that the informant's reliability was enhanced because "due to the trucker's reference to the location of * * * [the trooper's] squad car and the vehicle in question, the trooper was able to verify that the trucker was in the area, and in close proximity to the subject car." *Marben*, 294 N.W.2d at 699.

In this case, we assume the deputies' reliance on the dispatcher's message, viewed objectively, was justified. The dispatcher's message was much like the wanted flyer in *Hensley*. The deputies, having been told a particularly described automobile might have a drunk driver, then driving on the road, were justified in checking this out. *Hensley*, 105 S.Ct. at 683 ("In such a situation, of course, the officers making the stop may have a good faith defense to any civil suit.").

Whether, however, the evidence uncovered in the course of the stop is admissible depends on whether the dispatcher, who issued the message to the deputies, was in possession of specific and articulable facts supporting a reasonable suspicion that there was a drunk driver on the road. *Hensley*, 105 S.Ct. at 683. Since the dispatcher did not testify, all we know about the anonymous telephone call is what Deputy Berry tells us. Officer Berry says only

that a citizen had called in reporting having observed a possible drunk driver and giving a location and description of the car. Later in his trial testimony, Deputy Berry stated he had told defendant Olson that the officers had received a radio call that Olson's car "had been driving in an erratic manner." It was never made clear, however, if the dispatcher had been told by the anonymous caller that the car was being driven in an erratic manner, or if this was an embellishment added by either the dispatcher or the arresting officer.

In *Marben,* the officer receiving the anonymous tip was also the arresting officer, and because he received the tip at a time when he was in the immediate vicinity of the alleged traffic infraction, he was able to verify the reliability of the tip. Here, however, we know nothing about the informant and nothing about what the informant saw which led him or her to believe the Datsun driver was "possibly" drunk. The district court felt that, when the deputies failed to observe any erratic driving by the Datsun, the reliability of the informant then could no longer be presumed and, therefore, that the investigative stop was unjustified. As we stated in *Marben,* the factual basis for a traffic stop is minimal, and here the observance of erratic driving by the officer would have adequately corroborated the anonymous tip and justified an investigative stop. Indeed, erratic driving alone would have justified a stop. In this case, however, if the stop is to be justified, it must be on the factual basis of the tip itself.

The tip must have indicia of reliability. "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams,* 407 U.S. at 147, 92 S.Ct. at 1923–24. If the police chose to stop on the basis of the tip alone, the anonymous caller must provide at least some specific and articulable facts to support the bare allegation of criminal activity. Not much is required, especially for a traffic stop for a suspected traffic offense then in progress. "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *People v. Ingle,* 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975), quoted with approval in *Marben,* 294 N.W.2d at 699.

On this record, there is a complete lack of even the most minimal indicia of reliability for the anonymous tip. If police cannot stop a car on the highway on the basis of mere whim, neither can they stop on the basis, for all they know, of the mere whim of an anonymous caller.

The fourth amendment protection applies at the time the police intrusion is undertaken and is not to be judged by what the police learn after the intrusion. If the fourth amendment is to protect innocent drivers on the highway, it must afford that same protection to defendant Olson. It would have been a simple matter for the dispatcher to have elicited some minimal specific and articulable facts from the anonymous caller to support the caller's bare assertion of a possibly drunk driver on the road. This, however, was not done, or, if it was done, the state has failed to show that it was. The fourth amendment stands as a protection against unreasonable intrusions on an individual's privacy and personal security, and if this protection is to have any efficacy, it applies here.

Affirmed.

KELLEY, Justice (dissenting).

I respectfully dissent. I am unable to discern any material distinction between the private citizen "tip" in this case and the private citizen "tip" in our recent case *Marben v. State, Dep't of Public Safety,* 294 N.W.2d 697 (Minn.1980). In both cases the officers verified the "tip." In neither case did the officers observe erratic driving. In both cases the vehicles were as described by the tipster informant and on the highway at a place the tipster said they were. I would reverse.

PETERSON, Justice (dissenting).

I join in the dissent of Justice KELLEY.

SCOTT, Justice (dissenting).

I join in the dissent of Justice KELLEY.