**Larry Mark COTE,
Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC
SAFETY, Respondent.**

**No. C7–85–693.**

Court of Appeals of Minnesota.

Sept. 10, 1985.

Paul M. Malone, Malone & Mailander, Slayton, for petitioner, appellant.

Hubert H. Humphrey, III, Minn. Atty. Gen., Kenneth H. Bayliss, III, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## SUMMARY OPINION

POPOVICH, Chief Judge.

### FACTS

On December 23, 1984, Officer Roger Wipperman, a Westbrook policeman, received a telephone call from the Cottonwood County Sheriff's office. He was informed that a vehicle traveling westbound on a nearby highway with license number CQS 610 had been driving erratically and that the sheriff's office had received a citizen's complaint.

Officer Wipperman took his personal car and intercepted the vehicle at an intersection approximately one mile outside his jurisdiction. Wipperman followed the car about twelve miles to the City of Currie. Wipperman observed the car weave inside its own lane eight or nine times but did not observe any traffic violations. Wipperman maintained radio contact with the Murray County Sheriff's office during this period. In Currie, Officer Wipperman flagged down the car and identified himself as a police officer. He told the driver the sheriff's department wanted to talk to him and to wait.

Within minutes, a Murray County Deputy Sheriff arrived. After consulting with Wipperman, the deputy contacted the State Patrol. Trooper Stephen Willers arrived approximately 10 to 15 minutes later. Trooper Willers asked the driver for his license. The driver said he didn't have it with him and identified himself as appellant Larry Cote.

Willers noticed a strong odor of alcohol on appellant's breath, that appellant looked drowsy, had a flushed face and slurred speech. Willers had appellant perform several field sobriety tests and concluded appellant was intoxicated. Willers then asked appellant to take a preliminary breath test. Appellant responded, "I have been drinking all night; I will light that thing up," and refused the preliminary breath test. Appellant was arrested and taken to a hospital for a blood test. Analysis revealed appellant's blood alcohol concentration was .25 percent.

## DECISION

1. Appellant claims the trial court erred in sustaining his driver's license revocation because (1) evidence used in the implied consent proceeding was the product of an illegal arrest and (2) he was denied the right to consult with an attorney before testing. The legality of requiring appellant to submit to chemical testing is governed by Minn.Stat. § 169.123, subd. 2 (1984), which states:

> The test may be required of a person when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 and one of the following conditions exist: (1) the person has been lawfully placed under arrest for violation of section 169.-121, or an ordinance in conformity with it; or (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death; or (3) the person has refused to take the screening test provided for by section 169.121, subdivision 6; or (4) the screening test was administered and recorded an alcohol concentration of 0.10 or more.

*Id.*

While our supreme court sustained a rescission of the Commissioner's revocation of a driver's license in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985), because of reliance on an anonymous tip but without other indicia of reliability such as erratic driving, the court did say:

> * * * and here the observance of erratic driving by the officer would have adequately corroborated the anonymous tip and justified an investigative stop. In-

deed, erratic driving alone would have justified a stop.

*Id.* at 556.

Officer Wipperman was outside of his jurisdiction when he first observed appellant and when he stopped appellant. Appellant did not commit an offense in Wipperman's presence but appellant's erratic driving was observed by him.

We do. not believe *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) requires the exclusion of evidence from a driver's license revocation hearing under these circumstances. In *Wong Sun,* the Supreme Court stated:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417–18 (quoting Maguire, Evidence of Guilt 221 (1959)). The evidence obtained in this matter would have been obtained despite Wipperman's stop. County officers were aware of the situation and arrived at the scene within two minutes. The evidence gathered by Trooper Willers was not tainted by Officer Wipperman's stop.

■ 2. This matter is an implied consent proceeding and not a criminal proceeding. Under Minn.Stat. § 169.123, subd. 2, however, only one of the four conditions listed need be satisfied in order to request chemical testing. Here, appellant refused to take a preliminary breath test. Trooper Willers had reason to believe appellant was driving while intoxicated. Thus, Trooper Willers properly ordered appellant to submit to a blood test. *See* Minn.Stat. § 169.-123, subd. 2; *cf. State v. McDonnell,* 353 N.W.2d 678, 680 (Minn.Ct.App.1984).

■ 3. Appellant did not have a right to consult with an attorney before deciding whether to consent to chemical testing. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 517 (Minn.1985).

Affirmed.