**STATE of Minnesota, Respondent,**

v.

**Charles Thomas PEALER, Appellant.**

**No. C1-92-269.**

Court of Appeals of Minnesota.

Aug. 11, 1992.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Brian J. Murphy, Marshall, for respondent.

Cecil Naatz, Marshall, for appellant.

Considered and decided by DAVIES, P.J., and LANSING and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant, Charles Thomas Pealer, alleges that the trial court erred in finding that the police officer had reasonable suspicion to stop his vehicle.

## FACTS

On December 17, 1990, in late afternoon, police officer Terry Ewy, while on patrol in a marked police squad, was informed by the dispatcher that he had received a telephone call from police sergeant Leese, who was off duty, regarding an intoxicated driver who could be found at Taylor Lumber and would be getting into a blue Mitsubishi pickup truck. Thereafter, Leese informed Ewy by radio that the name of the driver was Pealer. Ewy went to Taylor Lumber but was unable to find the pickup.

Twenty minutes later, Ewy saw a blue Mitsubishi pickup traveling on the road. As Ewy attempted to stop the pickup, it turned into a store parking lot. While Ewy approached the parking lot, appellant left the pickup and entered a store. Ewy drove over to the pickup and did a registration check which showed the pickup was registered to appellant. Ewy drove across the lot and waited for appellant.

Next, Ewy saw appellant's pickup travel out of the lot, go down the street and turn into the Chicken Connection parking lot. Appellant got out of his pickup and walked into the establishment. In his police report, Ewy stated that he felt that appellant was attempting to elude him.

As Ewy drove around the block, he noticed that appellant had left the Chicken Connection. Ewy stopped appellant's pickup. Ewy did not see appellant drive in a manner indicating intoxication.

Ewy smelled a moderate odor of alcohol on appellant's breath and observed bloodshot watery eyes while conversing with him in the squad car. Upon failing the field sobriety tests, appellant was arrested for DWI. At the police station, Ewy then was informed by Leese that Leese had received his information of an intoxicated driver from a known confidential informant.

The trial court determined that Ewy had reasonable suspicion to stop appellant based on the information received from the known confidential informant. The trial court found appellant guilty of driving while under the influence of alcohol with a concentration of .10 or more in violation of Minn.Stat. § 169.121, subd. 1(d) and subd. 3a(a)(2) (1990).

## ISSUE

Did the police officer have a specific and articulable suspicion based on the tip of a known confidential informant to justify an investigatory stop of appellant's vehicle for DWI?

## ANALYSIS

An investigatory stop of a vehicle is justified where the police officer has a specific and articulable suspicion of a violation. *Marben v. State, Dept. of Pub. Safety*, 294 N.W.2d 697, 699 (Minn.1980). An anonymous tip, if reliable, may provide the requisite reasonable suspicion to justify an investigative stop. *Olson v. Commissioner of Pub. Safety*, 371 N.W.2d 552, 554 (Minn.1985).

Appellant argues that Ewy did not have reasonable suspicion to make an investigatory stop of appellant's vehicle based on the tip of the known confidential informant.

Ewy received a radio dispatch of an intoxicated driver. An officer is justified in relying on the dispatcher's message. *Id.* at 555. The dispatcher received his information from a telephone call from Leese. Leese received his information from a known confidential informant. The issue is whether Leese was in possession of specific and articulable facts supporting a reasonable suspicion that there was an intoxicated driver on the road. *Id.*

Appellant relies on *Olson* where two Hennepin County sheriff's deputies were on patrol when they received a radio dispatch that a citizen reported that he observed "a possible drunk driver." *Id.* at 556. The caller described the vehicle, gave the license number, and stated the location of the vehicle. However, there was nothing in the record about the informant or what the informant saw which led him to believe that the driver of the vehicle was possibly intoxicated. *See id.* at 555–56 (dispatcher who took call from informant did not testify at trial).

The *Olson* court concluded that if the stop is to be justified, it must be on the factual basis of the tip itself and that tip must have indicia of reliability. *Id.* at 556. The stop must not be the product of mere whim, caprice, or idle curiosity. *Id.* The court held that there was no justification to stop Olson's vehicle because the record failed to show "even the most minimal indicia of reliability for the anonymous tip." *Id.*

In contrast, in *City of Minnetonka v. Shepherd*, 420 N.W.2d 887 (Minn.1988), the informant identified himself so as to give the police a way to verify that he was reliable. *Id.* at 890. In *Shepherd*, a person identifying himself as an attendant at a Q Petroleum station informed the county sheriff's office dispatcher that he had observed an intoxicated driver leave the gas station. The informant described the vehicle and license plate number. A police officer received the information and made an investigatory stop of the identified vehicle. *Id.* at 888–89. The court held that the call gave the police sufficient information to reasonably suspect that the driver of the vehicle in question was intoxicated. *Id.* at 888. The police could hold the identified informant accountable if he knowingly provided false information. *Id.* at 890.

This case is distinguishable from *Olson*, and is controlled by *Shepherd*. The known confidential informant described the vehicle, gave the name of the driver, and placed it at a specific location. Ewy found the vehicle twenty minutes later. The police could hold the informant accountable if

he knowingly provided false information because the informant's identity was known to Leese. These are specific and articulable facts to give the police sufficient information to reasonably suspect that appellant was driving while intoxicated.

## DECISION

The trial court did not err in finding that there was a specific and articulable suspicion that appellant was driving while intoxicated, created by the specific facts given by the known confidential informant.

Affirmed.