*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A13-1883**

Neil Douglas Rollins, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 11, 2014**
**Affirmed**
**Larkin, Judge**

Washington County District Court
File No. 82-CV-13-239

Robert M. Christensen, Steven J. Wright, Robert M. Christensen, P.L.C., Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Anne Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license under Minnesota's implied-consent law. We affirm.

# FACTS

Appellant Neil Douglas Rollins petitioned the district court for judicial review of respondent Minnesota Commissioner of Public Safety's revocation of his driver's license. Rollins argued that the police "illegally seized [him] without any reasonable belief that he was engaged in criminal activity" and "compelled [him] to submit to a warrantless search of his body" by reading him the implied-consent advisory and asking if he would take a breath test.

Sergeant Matt Wieland and Deputy Jason Sutherland from the Washington County Sheriff's Office testified at the evidentiary hearing on Rollins's petition. Rollins also testified. The district court found the following facts.

On December 29, 2012, Sergeant Wieland responded to a report of a motor vehicle in a ditch on Manning Avenue in rural Washington County. Sergeant Wieland observed an Acura sedan in the ditch as reported; Rollins's brother was outside of the Acura shoveling snow. Sergeant Wieland spoke with Rollins's brother and noticed several indications of alcohol consumption. Rollins's brother told Sergeant Wieland that Rollins was driving the car when it went into the ditch. A passerby told Sergeant Wieland that the driver of the Acura got out of the car and walked up the driveway of a nearby farmhouse.

Deputy Sutherland drove to the farmhouse looking for Rollins. When he did not see anyone at the farmhouse, he continued driving north on Manning Avenue and saw Rollins walking along the road. Deputy Sutherland stopped his squad car, activated the emergency lights, got out of his car, and approached Rollins on foot. Deputy Sutherland

2

noticed that Rollins had an odor of alcohol on his breath, spoke with slurred speech, and displayed poor balance. Rollins told Deputy Sutherland that he had driven the Acura that was in the ditch. Deputy Sutherland administered a horizontal-gaze-nystagmus test and observed signs of impairment. After a preliminary breath test showed an alcohol concentration of .11, Deputy Sutherland arrested Rollins and drove him to the Washington County Jail.

At the jail, Deputy Sutherland read Rollins Minnesota's implied-consent advisory. Rollins declined the opportunity to consult with an attorney and agreed to take a breath test. The test indicated an alcohol concentration of .12. Deputy Sutherland did not attempt to obtain a warrant prior to administering the breath test.

The district court concluded that Deputy Sutherland's initial stop of Rollins was lawful and that Rollins freely and voluntarily consented to provide a breath sample. The district court also concluded that Rollins's breath sample was obtained during a lawful search incident to arrest. The district court sustained the revocation of Rollins's driver's license, and Rollins appeals.

**D E C I S I O N**

**I.**

Rollins argues that "[t]he deputy seized [him] without reasonable suspicion that he was engaged in wrongdoing." Both the United States and Minnesota Constitutions prohibit unreasonable search and seizure by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may, however, initiate a limited investigative stop if the officer has reasonable, articulable suspicion of criminal activity. *State v. Pike*,

551 N.W.2d 919, 921-22 (Minn. 1996). Whether police have reasonable suspicion to conduct an investigatory stop depends on the totality of the circumstances, and a stop is not justified if it is "the product of mere whim, caprice, or idle curiosity." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 448 (Minn. App. 2005) (quotation omitted), *review denied* (Minn. June 28, 2005). The court may consider the officer's experience, general knowledge, and observations; background information, including the time and location of the stop; and anything else that is relevant. *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). "The issue is whether objective, reasonable, articulable suspicion of a violation of law existed at the time of the stop." *State v. Beall*, 771 N.W.2d 41, 45 (Minn. App. 2009).

"We review a district court's determination regarding the legality of an investigatory traffic stop and questions of reasonable suspicion de novo." *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). "[I]n a case where the facts are not significantly in dispute [appellate courts] simply analyze the testimony of the officers and determine if, as a matter of law, the officers were justified under the cases in doing what they did." *State v. Storvick*, 428 N.W.2d 55, 58 n.1 (Minn. 1988); *See also Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn. 1985) (declining to review the facts under the clearly-erroneous standard, which is only used "if the [district] court had rejected some of the deputy's testimony" and stating that the "appropriate approach" is "to simply analyze the testimony of the officer and determine whether, as a matter of law, his observations provided an adequate basis for the stop").

4

Rollins argues that he "was seized at the moment [Deputy] Sutherland pulled up alongside him, turned on his overhead lights, and ordered him to stop, because no reasonable person seeing that would believe that he could ignore the deputy and keep walking." At oral argument to this court, the commissioner conceded that Rollins was seized at that point in time. Rollins argues that the seizure was unlawful because "the officers collectively knew only that [he] was possibly the driver, and possibly he had been drinking." Rollins relies on *Olson v. Comm'r of Pub. Safety*, in which the supreme court concluded that the police violated the Fourth Amendment when they stopped a vehicle based only on an anonymous report regarding a possible drunk driver. 371 N.W.2d 552, 555-56 (Minn. 1985). The supreme court noted that "we know nothing about the informant and nothing about what the informant saw which led him or her to believe the Datsun driver was 'possibly' drunk." *Id.* at 556.

Here, the seizure was based on more than an unsupported assertion from an unidentified source. Sergeant Wieland testified that Rollins's brother told him that Rollins had been drinking and that Rollins drove the Acura into the ditch. The drinking allegation was supported by Rollins's brother's indicia of intoxication. And the allegation that Rollins was the driver was supported by the passerby who told Sergeant Wieland that the driver of the Acura got out of the vehicle and walked away. Thus, unlike the police in *Olson*, Sergeant Wieland and Deputy Sutherland had specific facts from an identified source that, when considered in the context of the surrounding circumstances, supported a reasonable suspicion that Rollins may have been driving under the influence of alcohol. *See In re Welfare of G. (NMN) M.*, 542 N.W.2d 54, 57

5

(Minn. App. 1996) ("[T]he grounds for making [an investigative] stop can be based on the collective knowledge of all investigating officers."), *aff'd*, 560 N.W.2d 687 (Minn. 1997).

"All that is required is that [a] stop be not the product of mere whim, caprice, or idle curiosity." *Olson*, 371 N.W.2d at 556 (quotation omitted)). Because the police had reasonable, articulable suspicion that Rollins was driving while impaired, the seizure in this case was lawful. We therefore do not address the district court's conclusion that the seizure was also justified as a welfare check. *See State v. Lopez*, 698 N.W.2d 18, 21, 23 (Minn. App. 2005) (stating that a warrantless seizure may be justified in emergency situations).

**II.**

Rollins argues that "[t]he deputy compelled [him] to submit to a warrantless chemical test" and that "[t]he district court erred in determining that [he] gave his free and voluntary consent." The collection of a breath sample is a search under the Fourth Amendment. *Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709-10 (Minn. App. 2008). Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). One such exception is consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973).

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact . . . ." *Id.* at 227,

93 S. Ct. at 2047-48. "Therefore, the 'clearly erroneous' standard controls [appellate] review of a district court's finding of voluntary consent." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "Findings of fact are clearly erroneous if, on the entire evidence, [a reviewing court is] left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47.

In *State v. Brooks*, the supreme court reiterated that the "police do not need a warrant if the subject of the search consents." 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The supreme court described the consent exception to the warrant requirement as follows:

> For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances. Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority.
> . . . .
> . . . This analysis requires that we consider the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.

*Id*. at 568-69 (quotations and citations omitted).

The supreme court explained that "the nature of the encounter includes how the police came to suspect [the defendant] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an attorney." *Id*. at 569. The

7

supreme court concluded that Brooks voluntarily consented to three searches because he did not dispute that the police had probable cause to believe he had been driving under the influence; he did not "contend that police did not follow the proper procedures established under the implied consent law"; the police read "the implied consent advisory before asking him whether he would take all three tests, which makes clear that drivers have a choice of whether to submit to testing"; the "police gave Brooks access to telephones to contact his attorney and he spoke to a lawyer"; and "[a]fter consulting with his attorney, Brooks agreed to take the tests in all three instances." *Id*. at 569-70. The supreme court further noted that although Brooks was in custody, he "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id*. at 571.

In this case, Rollins does not dispute that Deputy Sutherland had probable cause to believe he had been driving under the influence. He does not contend that the police failed to follow proper procedures under the implied-consent law. Deputy Sutherland read Rollins the implied-consent advisory, which made it clear that Rollins had a choice of whether to submit to testing. Although Rollins declined to speak with an attorney, Deputy Sutherland informed him that he had the right to do so, which is the relevant consideration under *Brooks*. *See id*. at 569 (stating that the totality of the circumstances includes "whether [the defendant] had the right to consult with an attorney"). Lastly, when Rollins agreed to take a breath test, he had not been confronted with repeated police questioning or held in custody for days. This record does not suggest that Rollins was coerced into providing a breath sample. *See id*. at 571 ("[N]othing in the record suggests

8

that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." (quotation omitted)).

Rollins argues that a "long line of precedents outlining the consent exception are still valid," and that "it is difficult to figure out how those precedents and *Brooks* coexist as good law." Although there may be inconsistencies between *Brooks* and prior caselaw, this court is nonetheless bound to apply and follow *Brooks*. The court of appeals must follow Minnesota Supreme Court precedent.[1] *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). The most recent and relevant precedent here is *Brooks*, and the facts of this case are similar to those in *Brooks*.

Rollins also argues that "[t]he district court erroneously placed the burden of proof on [him], finding for the commissioner because '[he] provided no evidence of coercion.'" The district court's statement that Rollins did not present evidence of coercion does not lead us to conclude that the district court erroneously shifted the burden. In the very next line, the district court concluded that "the [commissioner] has proven by a preponderance of the evidence that [Rollins's] consent was free and voluntary."

In sum, the district court did not err in finding that Rollins's consent was free and voluntary. And because the consent exception applies, the search was legal. It therefore is unnecessary to address the district court's alternative theory that collection of the breath sample was a lawful search incident to arrest or the state's alternative arguments for affirmation.

---

[1] We observe that the United States Supreme Court denied review in *Brooks*. *Brooks v. Minnesota*, 134 S. Ct. 1799 (2014).

## III.

On appeal, Rollins argues that "[t]he deputy violated [his] right to due process by threatening criminal penalties the state could not lawfully impose." Rollins did not raise this due-process argument in district court.

Generally, appellate courts consider only those issues that were presented to and considered by the district court in deciding the matter before it. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Rollins does not offer a persuasive reason why this court should consider his due-process argument for the first time on appeal. *See* Minn. R. Civ. App. P. 103.04 (noting that appellate courts may address issues as justice requires and rulings affecting the ruling from which an appeal is taken). Moreover, the commissioner did not brief the issue on appeal. *Cf. Woodhall v. State*, 738 N.W.2d 357, 363 n.6 (Minn. 2007) (addressing the constitutionality of a statute questioned for the first time in the supreme court, in part because "the state briefed the issue, [and] we do not prejudice the state by considering the constitutionality of [the statute]"). For those reasons, we decline to consider Rollins's due-process argument for the first time on appeal.

**Affirmed.**