*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1022**

State of Minnesota,
Respondent,

vs.

Melissa Jill Thompson,
Appellant.

**Filed June 29, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-13-5913

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Samuel Tunheim, Certified Student Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Andrew W. Crouse, Special Assistant State Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

On appeal from a conviction of fifth-degree possession of a controlled substance, appellant Melissa Thompson challenges the district court's denial of her motion to suppress the evidence of heroin. She contends that police conducted an illegal warrantless stop and search of her car based solely on information provided by an informant. Because the informant was reliable and police had reasonable, articulable suspicion to stop Thompson, we affirm.

## FACTS

Around mid-afternoon on February 22, 2013, Minneapolis Police Officers Peter Stanton and Adrian Infante received a call from a security and loss prevention officer who worked at Cub Foods (the security guard). The security guard had called from a city-issued cell phone that was purchased as a crime prevention tool by the Broadway Coalition, an organization aimed at preventing crime. Loss prevention officers, like the security guard, were given these cell phones and the numbers of the officers working in their area as a way for members of the community to easily contact the police.

Officer Stanton testified that he and other officers knew the security guard because they had helped him with crime-related issues at the Cub Foods store, including arresting many customers for using heroin in the store's bathroom. Officer Stanton also testified that he had worked with the security guard on many occasions and trusted the guard's expertise in recognizing when someone was under the influence of drugs or alcohol.

Officer Stanton said that the security guard had never falsely identified someone as being under the influence when the person was not.

The security guard told Officer Stanton that he saw a woman with a small child in the store and that the woman appeared to be under the influence. The woman was later identified as appellant Melissa Thompson. The security guard also told Officer Stanton that Thompson had purchased syringes with cash. He said that Thompson had left the store, he described the make and model of her car, and he gave its license plate number to Officer Stanton. The security guard also said that he was fearful for the safety of the child. Officers Stanton and Infante observed a car matching the security guard's description leaving the store's parking lot. They verified that the car was driven by a female and saw that it contained a child's car seat.

Despite observing no traffic violations, Officers Stanton and Infante immediately pulled Thompson over. When they approached her car, they testified that the driver was making movements toward the car's passenger side and appeared to be reaching for something or stowing something. Officer Infante testified that he saw Thompson attempting to hide syringes. The officers also testified that they saw pieces of tin foil with burn marks, cellophane wrappers, and lighters on the car's floor. Thompson's 16-month-old daughter was in the back seat.

The officers further testified that Thompson appeared to be under the influence of a controlled substance because she had pinpoint pupils, and she was sluggish and disoriented. Officer Infante said that Thompson had trouble obeying simple commands. He then handcuffed Thompson and put her in the police car. Officer Infante searched the

3

car and recovered tin foil, cellophane, lighters, and the syringes that Thompson had purchased at the store, all of which he testified were paraphernalia associated with drug use. Officer Stanton found Thompson's purse on the floor of her car and found a pill bottle containing a white powdery substance that field-tested positive for heroin.

Thompson was charged with fifth-degree possession of a controlled substance. *See* Minn. Stat. §152.025, subd. 2(a)(1) (2012). Thompson moved to suppress the heroin recovered in her purse, arguing that the police lacked reasonable, articulable suspicion to stop her car. The district court held a *Rasmussen* hearing and denied the motion to suppress. After a stipulated-facts trial, Thompson was found guilty of fifth-degree possession of a controlled substance. The district court stayed adjudication for three years, placed Thompson on probation for that three-year period, and ordered Thompson to serve 30 days at the workhouse by electronic home monitoring. Thompson appealed.

## DECISION

On appeal from a pretrial order denying a motion to suppress, this court independently reviews the facts and determines, as a matter of law, whether the district court erred in suppressing the evidence. *State v. Flowers*, 734 N.W.2d 239, 247 (Minn. 2007). When the facts are not in dispute, the legality of an investigatory stop is a question of law that this court reviews de novo. *Id.* at 248.

The United States and Minnesota Constitutions protect against "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The United States Supreme Court has held that 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable,

4

articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000)). While the reasonable suspicion standard is not high, an officer's suspicion must not be the product of "mere whim, caprice or idle curiosity." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004). To meet the reasonable suspicion threshold, an officer "must articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Timberlake*, 744 N.W.2d at 393 (quotation omitted).

This court considers the totality of the circumstances to determine if reasonable suspicion exists. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007). *Id.* "The information necessary to support an investigative stop need not be based on the officer's personal observations, rather, the police can base an investigative stop on an informant's tip if it has sufficient indicia of reliability." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). Tips from private citizen informants are presumed reliable, especially "when informants give information about their identity so that the police can locate them if necessary." *Timberlake*, 744 N.W.2d at 394.

Thompson argues that the tip did not give police reasonable suspicion of criminal activity because the security guard failed to provide specific, articulable facts to support his conclusion that Thompson "appeared to be under the influence." In support of this argument, Thompson relies on *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn. 1985). The state argues, and we agree, that the tip was sufficient to give police reasonable suspicion to stop Thompson.

5

In *Olson*, police received a tip from an anonymous citizen who called regarding a suspected drunk driver. *Id.* at 553. Officers spotted the car that the anonymous citizen had described and followed it for about half a mile. *Id.* They did not observe any erratic driving but stopped the car anyway. *Id.* The supreme court concluded that the police did not have the requisite reasonable suspicion to stop the car because the anonymous tip lacked a sufficient indicia of reliability. *Id.* at 556. The supreme court explained that the tip lacked reliability because "we know nothing about the informant and nothing about what the informant saw which led him or her to believe the [appellant] was 'possibly' drunk." *Id.* The supreme court also noted that "[i]t would have been a simple matter for the dispatcher to have elicited some minimal specific and articulable facts from the anonymous caller to support the caller's bare assertion of a possibly drunk driver on the road." *Id.*

But contrary to Thompson's assertion, *Olson* does not stand for the proposition that *every* informant's tip must include specific, articulable facts before police can rely on them for a stop. Rather, *Olson* focused on the anonymity of the caller and determined that the tip's anonymous origins, combined with its lack of specific facts supporting the allegation of criminal activity, showed that police lacked an adequate basis for the stop. *Id.*

Courts have upheld investigatory stops based on general tips of drunk driving so long as the informant can be identified, and the record supports an inference that the informant's tip was based on personal observation. *See, e.g.*, *Navarette v. California*, 134 S. Ct. 1683, 1689-90 (2014) (concluding that an unidentified 911 caller's tip that a truck

6

had run her off the road had a sufficient indicia of reliability because the tip described the truck, police located the truck in the area that confirmed the caller's timeline of events, and the caller used the 911 emergency system that permits authorities to identify and to trace the caller); *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 891 (Minn. 1988) (stating that a gas station attendant's tip that a driver was intoxicated was sufficient to justify an investigatory stop); *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560-61 (Minn. App. 2005) (stating that an identified citizen's tip that a driver was drunk was sufficient to establish reasonable suspicion because it was based on the informant's personal observation); *State v. Pealer*, 488 N.W.2d 3, 5 (Minn. App. 1992) (concluding that police had reasonable suspicion for an investigatory stop based on a known, confidential informant's tip that a driver was intoxicated); *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 749 (Minn. App. 1989) (concluding that a Burger King employee's tip that a driver was drunk was sufficient to justify an investigatory stop because the employee personally observed the driver).

For example in *Shepherd*, a gas station attendant called police and stated that he observed an intoxicated driver leave the gas station and gave a description of the car and its license plate number. 420 N.W.2d at 888. Police stopped the car and the driver failed a breath test. *Id.* at 888-89. The district court granted the driver's motion to suppress, reasoning that suppression was required under *Olson*. *Id.* at 889. This court agreed with the district court. *Id.*

The supreme court reversed, concluding that reliance on *Olson* was misplaced because the informant in *Olson* was anonymous and provided little information beyond

7

an assertion that the driver was drunk. *Id.* at 890-91. In contrast, the informant in *Shepherd* identified himself as a gas station attendant at the Q Petroleum Station in Minnetonka. *Id.* at 890. This distinction was relevant because "[b]y so describing himself, the caller knowingly gave the police a way of verifying that the caller was who he said he was." *Id.* The supreme court also distinguished *Olson* based on personal observation: the informant in *Shepherd* was a gas station attendant who said that an intoxicated driver just left the station whereas the informant in *Olson* provided no information from which the court could infer personal observation. *Id.* at 891.

Here, even more so than the informant in *Shepherd*, the security guard was identifiable: he had worked with police on numerous occasions and had a city-issued cell phone to call local officers on patrol. The security guard had also never mistakenly identified a person under the influence. Because this court will credit a layperson's opinion regarding whether a person is under the influence, *Playle*, 439 N.W.2d at 749, the security guard's conclusion that Thompson was under the influence applies with even greater weight considering his successful track record with police.

The record also shows that the security guard's conclusion was based on personal observation: using the store's video surveillance, the guard watched Thompson and determined that she was under the influence. Thompson argues that video surveillance does not equate to "personal observation" because the guard could not see her eyes, smell her breath, hear her speech, or see if she had trouble following directions. We disagree.

Thompson cites no caselaw to support her contention that watching a person on a surveillance camera is not "personal observation," and Thompson has provided no

8

evidence to show that the guard's ability to observe Thompson's behavior would be curtailed by using the store's surveillance cameras.[1] We therefore conclude that the security guard's use of video surveillance was sufficient personal observation.

Thompson further contends that police could not rely on the security guard's tip because it used equivocal language: the tip said that Thompson *appeared* to be under the influence instead of stating that she *was* under the influence. This court has rejected a similar argument in the past, and we do not find this distinction persuasive based on the circumstances here. *See State v. Hjelmstad*, 535 N.W.2d 663, 666 (Minn. App. 1995) (concluding that the difference between the informant's equivocal statement that the driver was "possibly drunk" versus a more definite statement of "drunk" was a distinction of "little significance").

Thompson next argues that police cannot rely on the fact that she bought syringes with cash to justify reasonable suspicion of criminal activity because using cash and buying syringes are not criminal acts and could have innocent explanations. Buying syringes with cash is not a criminal act. But this court can consider acts wholly consistent with innocent explanations in a totality of the circumstances analysis. *See State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998). And in light of the security guard's observations of Thompson, these facts help support a finding of reasonable suspicion.

---

[1] In fact, although we do not rely on this suspicion, we assume that the video surveillance technology is sophisticated enough to allow a security guard to zoom in on a particular customer who is displaying suspicious behavior.

9

Finally, Thompson argues that police had no reasonable, articulable suspicion to stop her because they did not corroborate the security guard's tip. We disagree.

The record shows that police corroborated several key facts from the tip before they pulled Thompson over, including the security guard's description of her car, her license plate number, and the fact that her car had a baby carrier. When a tip regarding a driver under the influence provides sufficient reasonable suspicion, as it did here, police are encouraged to investigate immediately rather than increase the chance that the suspect would be involved in an accident. *See Playle*, 439 N.W.2d at 749. We also recognize that the presence of the child in the backseat—although not a factor contributing to reasonable suspicion—added to the exigency of the situation and explains why the officers reasonably chose not to observe Thompson's behavior in traffic before stopping her car.

Given the totality of the circumstances, the police had reasonable, articulable suspicion to stop Thompson. Accordingly, the district court properly denied Thompson's motion to suppress.

**Affirmed.**