*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1424
A15-1431**

Christine Marie Tomlinson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent
(A15-1424),

and

State of Minnesota,
Respondent
(A15-1431),

vs.

Christine Marie Tomlinson,
Appellant.

**Filed May 16, 2016
Affirmed
Ross, Judge**

Watonwan County District Court
File Nos. 83-CV-15-144
83-CR-15-158

Jacob M. Birkholz, Birkholz & Associates, LLC, Mankato, Minnesota (for appellant)

Lori Swanson, Attorney General, Frederic J. Argir, Assistant Attorney General, St. Paul, Minnesota; and

Stephen J. Lindee, Watonwan County Attorney, St. James, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Randall, Judge.[*]

## UNPUBLISHED OPINION

**ROSS**, Judge

Christine Tomlinson's boyfriend contacted the sheriff's office after midnight and reported that, based on his impression from a text-message exchange with Tomlinson and her custom of driving home drunk from the club meeting she had just left, he believed that Tomlinson was driving drunk. A deputy identified and stopped the truck Tomlinson was driving, finding Tomlinson to be considerably intoxicated. Tomlinson stipulated to the state's case, and the district court convicted her of two counts of driving while impaired. Tomlinson argues on appeal that the district court should have suppressed all post-stop evidence because the deputy lacked reasonable suspicion to justify the stop. We hold that the deputy had reasonable grounds for the stop, and we affirm.

## FACTS

About an hour and a half after midnight on a Thursday night in March 2015, Jay Janzen called the Watonwan County Sheriff's Office. Janzen said that his girlfriend, Christine Tomlinson, was driving drunk from Vernon Center to their shared home east of Ormsby. Deputy Mark Slater drove to the couple's rural home to investigate.

Deputy Slater spoke with Janzen. He learned from Janzen that Tomlinson was still not home, that she was driving from a snowmobile club meeting from which she regularly

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

drives home drunk, and that his text-message exchange with Tomlinson informed him that Tomlinson had become lost.

Deputy Slater found Tomlinson's pickup truck at about 2:20 a.m. traveling rapidly down a gravel road. The deputy drove close behind for some distance, until the truck slowed quickly and pulled to the right. The deputy stopped the truck. Tomlinson appeared to be drunk. Deputy Slater administered field sobriety tests, confirming his suspicion. He arrested her, took her to jail, and administered a breath test that indicated that her alcohol concentration was twice the per se intoxication limit.

The state charged Tomlinson with two counts of impaired driving based separately on her physical impairment and on her alcohol-concentration level. Tomlinson moved the district court to suppress all evidence obtained after the stop, arguing that Deputy Slater lacked reasonable suspicion to stop the truck.

The district court conducted a hearing. The parties presented the deputy's squad-car video recording depicting Deputy Slater following closely and then stopping Tomlinson's pickup on the gravel road. The deputy said he based the stop on the tip and on Tomlinson's driving. He emphasized her rapid deceleration and her movement to the right. Tomlinson countered, testifying that her deceleration and rightward movement was reasonable to allow the tailing car to pass. The district court denied Tomlinson's motion, deeming the stop justified based on the drunk-driving tip and on Tomlinson's driving. Tomlinson stipulated to the state's case under Minnesota Rule of Criminal Procedure 26.01, subdivision 4, preserving for appeal her right to challenge the district court's suppression decision. The district court found Tomlinson guilty of impaired driving. She appeals.

3

**D E C I S I O N**

Tomlinson asks us to reverse the denial of her motion to suppress, arguing that the stop was unconstitutional. We review de novo a district court's conclusion that an officer had the constitutional ground to stop a motorist. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). Police may stop a motorist without a warrant without offending the motorist's Fourth Amendment rights if the officer bases the stop on reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968); *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008).

Tomlinson convincingly argues that her driving did not warrant the stop. A traffic violation itself would certainly be sufficient. *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004). But an objectively reasonable officer would not conclude that Tomlinson's driving was either illegal or suspicious. A reasonable officer would know that a late-night driver may be alarmed and act defensively upon being approached rapidly from behind and then tailgated by an unknown vehicle. Allowing oneself to be tailgated at high speed on a barren gravel road can be dangerous regardless of the tailgater's condition or intentions. *Cf. State v. Brechler*, 412 N.W.2d 367, 368 (Minn. App. 1987) (reasoning that a driver's conduct could have been caused by the presence of a police car following in close proximity). At that hour a reasonable driver might also fear that the tailgater has criminal intentions or is suffering from some mental impairment, like, for instance, intoxication. We agree with Tomlinson that there was nothing objectively suspicious, illegal, or unusual about her slowing and pulling to the side of the road.

But there was more than Tomlinson's driving. We assess the constitutionality of a traffic stop on all relevant circumstances, including the time, the location, and the officer's ability to draw inferences and conclusions based on his training. *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). And reasonable suspicion may arise from information supplied by an informant. *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). Although Tomlinson admitted to the district court that she had informed Janzen that she had been drinking, the record does not indicate that he relayed this specifically to the deputy. The deputy nevertheless was aware of the following details: Tomlinson was driving very late, after midnight; Tomlinson reportedly customarily drives home drunk after she leaves the club meeting she had just left; Tomlinson got lost despite her apparent familiarity with her route; Tomlinson had still not found her way home in the 45 minutes between the time of the call and the time the deputy encountered her on the road; and Tomlinson's boyfriend, who lives with Tomlinson, believed that her communication to him indicated that she was drunk. These circumstances would allow any reasonable officer to suspect that Tomlinson may have been driving drunk. This reasonable suspicion warrants the minimal intrusion of the brief traffic stop. Immediately after the stop the deputy saw that Tomlinson appeared to be drunk, justifying the longer detention necessary for the deputy to administer field sobriety tests.

Tomlinson argues that Deputy Slater's knowledge of tumult in her and Janzen's relationship undermines the reliability of Janzen's tip. We reach a different conclusion. When an informant gives sufficient detail allowing police to locate him and hold him accountable if his information turns out false, the officer can assume that the informant is

telling the truth. *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 890 (Minn. 1988). Janzen identified himself to the sheriff's office and then spoke at his home in-person with the deputy. Janzen's open exposure to punishment constituted a weighty counterbalance to the possibility that he might be trying to trouble Tomlinson by a false police report.

We are not persuaded otherwise by Tomlinson's contention that Janzen's report lacked credibility because he did not personally observe Tomlinson—or even hear her speak—before he told police she was intoxicated. The contention has only faint support in the caselaw. In *Olson v. Commissioner of Public Safety*, for example, the supreme court invalidated a stop that rested on an anonymous caller's "bare assertion of a possibly drunk driver on the road." 371 N.W.2d 552, 556 (Minn. 1985). Similarly, in *Rose v. Commissioner of Public Safety*, we concluded that the officer lacked reasonable suspicion when he relied on a gas-station attendant's report that a driver was intoxicated, reasoning that the informant had not personally observed the driver and the circumstances did not inform the officer how the attendant concluded that the driver was intoxicated. 637 N.W.2d 326, 330 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002).

But *Olson* and *Rose* are easily distinguished from this case. Janzen was not an anonymous informant who provided only a "bare assertion" of "possibly" drunk driving, like the informant in *Olson*. 371 N.W.2d at 556. Nor was he a stranger-informant who failed to provide any basis for his conclusion, like the informant in *Rose*. 637 N.W.2d at 330. Janzen expressed that Tomlinson *was* intoxicated, not just *possibly* intoxicated, and he was convinced of it based on his personal experience with Tomlinson's regularly driving home drunk after her snowmobile club meetings and on her getting lost after leaving the

6

meeting late that night. As for the nature of the contact between Janzen and Tomlinson, we recognize that a written exchange would almost certainly not prove intoxication. But even a text-message communication, particularly between people very familiar with each other, might raise the suspicion of intoxication either by its substance or its form.

This case is sufficiently similar to those in which the informant confidently communicated drunk driving and in which the basis for the report was apparent. In *Shepherd*, the supreme court affirmed a stop based on a gas-station attendant's reporting that he saw a drunk driver leave the station. 420 N.W.2d at 890–91. In *Playle v. Commissioner of Public Safety*, we deemed a fast-food employee's tip sufficient after the employee reported encountering a drunk driver at a drive-up window. 439 N.W.2d 747, 748–49 (Minn. App. 1989). And in *Jobe v. Commissioner of Public Safety*, we held that the stop was justified when the informant stated that he saw the reported driver swerving. 609 N.W.2d 919, 920, 923 (Minn. App. 2000). The deputy here was reasonably satisfied from the informant's familiarity with Tomlinson's habits and from their contemporaneous communication that Tomlinson may be driving drunk.

The district court appropriately denied Tomlinson's motion to suppress the evidence that followed the traffic stop.

**Affirmed.**

7